**HALPER SADEH LLP**
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES DAWSON,<br><br>        Plaintiff,<br><br>        v.<br><br>SUNWORKS, INC., CHARLES F. CARGILE, DANIEL GROSS, JUDITH HALL, RHONE RESCH, and STANLEY SPEER,<br><br>        Defendants. | Case No:<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff James Dawson ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is an action against Sunworks, Inc. ("Sunworks" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Sunworks by The Peck

Company Holdings, Inc. ("Peck") and Peck Mercury, Inc. ("Merger Sub"), a wholly-owned subsidiary of Peck.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in this District.[1]

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Sunworks common stock.

---

[1] Sunworks has touted its expansion into the New Jersey solar market. *See* Sunworks, *Sunworks Expands Addressable Market with New Projects in Massachusetts and New Jersey* (Dec. 18, 2018), https://www.globenewswire.com/fr/news-release/2018/12/18/1668650/0/en/Sunworks-Expands-Addressable-Market-with-New-Projects-in-Massachusetts-and-New-Jersey.html.

7.      Defendant Sunworks, through its subsidiaries, provides photovoltaic based power systems for the agricultural, commercial, industrial, public works, and residential markets in California, Massachusetts, Nevada, Oregon, New Jersey, and Washington. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "SUNW."

8.      Defendant Charles F. Cargile ("Cargile") is Chief Executive Officer and Chairman of the Board of the Company.

9.      Defendant Daniel Gross ("Gross") is a director of the Company.

10.     Defendant Judith Hall ("Hall") is a director of the Company.

11.     Defendant Rhone Resch ("Resch") is a director of the Company.

12.     Defendant Stanley Speer ("Speer") is a director of the Company.

13.     Defendants Cargile, Gross, Hall, Resch, and Speer are collectively referred to herein as the "Individual Defendants."

14.     Defendants Sunworks and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

15.     On August 10, 2020, Sunworks and Peck announced that they had entered into a definitive agreement under which Peck will acquire Sunworks in an all-stock transaction. Under the terms of the agreement, each share of Sunworks common stock will be exchanged for 0.185171 shares of Peck common stock (subject to adjustments). The press release states, in pertinent part:

**The Peck Company Holdings to Acquire Sunworks via Share Exchange, Creating an Industry Leading Solar EPC with National Presence**

*All-Stock Transaction Provides Scale and Operating Efficiencies to Accelerate Revenue Growth and Margin Expansion*

*Conference Call Scheduled for Today at 5:30 p.m. ET*

August 10, 2020 04:03 PM Eastern Daylight Time

SOUTH BURLINGTON, VT and ROSEVILLE, CA--(BUSINESS WIRE)--The Peck Company Holdings, Inc. (NASDAQ: PECK) ( "Peck"), a leading commercial solar engineering, procurement and construction (EPC) company and Sunworks, Inc. (NASDAQ: SUNW) ("Sunworks"), a provider of solar power solutions for agriculture, commercial and industrial ("ACI"), public works and residential markets, today announced that they have entered into a definitive agreement under which Peck will acquire Sunworks in an all-stock transaction, pursuant to which each share of Sunworks common stock will be exchanged for 0.185171 shares of Peck common stock (subject to certain adjustments). Assuming no adjustments, Sunworks' stockholders would receive an aggregate of approximately 3,079,207 shares of Peck common stock, representing approximately 36.54% of Peck common stock outstanding after the merger.

\*       \*       \*

**Transaction Details**

The transaction is expected to close during the fourth quarter of 2020, subject to approval by shareholders of both companies and other customary closing conditions.

The Board of Directors of Peck and Sunworks have each unanimously voted in favor of the definitive transaction agreement.

As part of the agreement, after the transaction closes, Jeff Peck will continue as Chairman of the Board and Chief Executive Officer of the combined company. The Board of Directors of the combined company will be comprised of four members of the Peck Board of Directors and three members appointed by the Sunworks Board of Directors. Because the combined company will be in competition with SunPower Corporation in some markets, Doug Rose, who is also a Vice President at SunPower Corporation, has resigned from the Board of Directors of Peck to avoid conflicts of interests.

Roth Capital will be acting as financial advisor to Peck and Merritt and Merritt is serving as its legal counsel.

4

Holthouse Carlin & Van Trigt LLP is acting as financial advisor to Sunworks and Stradling Yocca Carlson & Rauth, P.C. is acting as its legal counsel.

16.     On October 15, 2020, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

17.     The Proxy Statement, which recommends that Sunworks shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (1) Sunworks's financial projections; (2) the financial analyses performed by Sunworks's financial advisor, Holthouse Carlin & Van Trigt LLP ("Holthouse"), in connection with its fairness opinion; (3) potential conflicts of interest involving Holthouse; and (4) potential conflicts of interest involving Company insiders.

18.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Sunworks Board's Recommendation and Reasons for the Merger; (ii) Opinion of Sunworks' Financial Advisor; and (iii) Background of the Merger.

19.     Unless and until the material misstatements and omissions (referenced below) are remedied before the November 12, 2020 shareholder vote on the Proposed Transaction, Sunworks shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning Sunworks's Financial Projections**

20.     The Proxy Statement omits material information concerning the financial projections of Sunworks.

5

21.     The Proxy Statement provides that Holthouse, in connection with its fairness opinion and with Sunworks's approval, reviewed, among other things, the following financial information prepared and/or provided to it by Sunworks's management:

> [C]ertain information relating to the historical, current and future operations, financial condition and prospects of Sunworks and Peck including, and in the case of Sunworks, internal financial projections (and adjustments thereto) prepared by the management of Sunworks relating to Sunworks for the fiscal years ending 2020 through 2025 and cash flow projections for the 13 weeks through October 18, 2020[.]

22.     The Proxy Statement, however, fails to disclose the aforementioned financial projections which were provided to Holthouse by Sunworks's management.[2]

23.     The disclosure of the aforementioned projected financial information is material because it would provide Sunworks shareholders with a basis to project Sunworks's and the combined company's future financial performance and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Sunworks and its financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

24.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

---

[2] This information is particularly material given Sunworks's and Peck's negotiations concerning the merger exchange ratio in July and August 2020. *See* Proxy Statement at 121-25. Sunworks ultimately accepted a lower exchange ratio than initially sought, which will result in Sunworks shareholders owning a lesser share of the combined company. *See Id*.

### 2.   Material Omissions Concerning Holthouse's Financial Analyses

25.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning Holthouse's financial analyses.

26.     The Company engaged Holthouse on July 20, 2020 to "conduct an analysis of the proposed exchange ratio to be fixed in the Merger Agreement and to render a written opinion to the Sunworks Board as to whether the exchange ratio would be fair to the stockholders of Sunworks from a financial point of view." *See* Proxy Statement at 123. In other words, Holthouse was only hired around three weeks before the Company executed the merger agreement with Peck.

27.     In connection with its fairness opinion, Holthouse performed a "*Selected Precedent M&A Transactions Analysis*," observing "overall low to high transaction value to revenue multiples and transaction value to EBITDA multiples of the selected precedent M&A transactions of 0.06x to 1.13x (with a mean of 0.59x and median of 0.63x), and 4.3x to 19.7x (with a mean of 12.3x and a median of 9.8x)." Using this analysis, Holthouse "derived a range of multiples of 0.15x to 0.20x based on the transaction value to revenue multiples based on the last 12 months ended June 30, 2020[,]" resulting in "an implied per share reference range from its selected precedent M&A transactions analysis of $0.60 to $0.76 per share." The range selected by Holthouse was below the mean and median range implied by its analyses. The Proxy Statement fails to disclose Holthouse's basis for applying this range, as well as the outliers excluded in its analysis and the reasons for that exclusion.

28.     With respect to Holthouse's "*Selected Public Companies Analysis*," the Proxy Statement fails to disclose the outliers excluded by Holthouse in its analysis and the reasons for that exclusion.

29.     The Proxy Statement fails to disclose the following concerning Holthouse's "*Discounted Cash Flow Analysis*": (1) Sunworks's financial projections for fiscal years ending

2020 through 2025, including each year of unlevered free cash flow and all underlying line items; and (2) the individual inputs and assumptions underlying the (i) discount rates ranging from 11.0% to 13.0%, and (ii) EBITDA exit multiple ranging from 4.0x to 5.0x.

30.     The Proxy Statement provides that, "[o]n August 6, 2020 . . . representatives from [Holthouse] presented their analysis of the Peck quality of earnings report to the Sunworks Board[.]" Although the merger consideration consists of Peck common stock, the Proxy Statement fails to disclose Holthouse's quality of earnings analysis of Peck.[3]

31.     The valuation methods, underlying assumptions, and key inputs used by Holthouse in rendering its purported fairness opinion must be fairly disclosed to Sunworks shareholders. The description of Holthouse's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Sunworks shareholders are unable to fully understand Holthouse's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3.   Material Omissions Concerning Potential Conflicts of Interest Involving Holthouse

32.     The Proxy Statement omits material information concerning potential conflicts of interest involving Holthouse.

33.     The Proxy Statement fails to disclose whether Holthouse performed any past

---

[3] The Proxy Statement provides that "Sunworks has paid another division of [Holthouse] a flat fee for performing a quality of earnings analysis on Peck for Sunworks. An aggregate fee of approximately $30,000 will be paid by Sunworks to [Holthouse] in connection with [Holthouse's] services related to its quality of earnings analysis on Peck." *See* Proxy Statement at 141.

services for (i) Sunworks and/or their affiliates, and (ii) Peck's affiliates, including the timing and nature of such services and the amount of compensation Holthouse received or expects to receive for providing such services.

34.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

35.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4.  Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

36.     The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

37.     The Proxy Statement provides that "interests of the directors and executive officers of Sunworks in the Merger include . . . possible continued employment of certain officers after the Merger and that, at the completion of the Merger, the Peck Board will be expanded to add three directors designated by Sunworks Board, which is expected to include Daniel Gross, Rhone Resch and Judith Hall." *See* Proxy Statement at 12.

38.     The Proxy Statement, however, fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

39.     Any communications regarding post-transaction employment during the

negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

40.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

41.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

43.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

44.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote

on the Proposed Transaction.

45.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange

Act and Rule 14a-9 promulgated thereunder.

46.     Because of the false and misleading statements and omissions in the Proxy

Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

47.     Plaintiff repeats and realleges each and every allegation contained in the foregoing

paragraphs as if fully set forth herein.

48.     The Individual Defendants acted as control persons of the Company within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions

as officers and/or directors of the Company and participation in and/or awareness of the

Company's operations and/or intimate knowledge of the false statements contained in the Proxy

Statement filed with the SEC, they had the power to and did influence and control, directly or

indirectly, the decision-making of the Company, including the content and dissemination of the

false and misleading Proxy Statement.

49.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected. As officers and/or directors of a publicly owned

company, the Individual Defendants had a duty to disseminate accurate and truthful information

with respect to the Proxy Statement, and to correct promptly any public statements issued by the

Company which were or had become materially false or misleading.

11

50.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

51.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

52.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.     Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: October 21, 2020                    Respectfully submitted,

                                           **HALPER SADEH LLP**

                                           /s/ Zachary Halper
                                           Zachary Halper, Esq.
                                           186 Darwin Lane
                                           North Brunswick, NJ 08902
                                           Telephone: (212) 763-0060
                                           Facsimile: (646) 776-2600
                                           Email: zhalper@halpersadeh.com

                                           Daniel Sadeh, Esq. (*pro hac vice* application
                                           forthcoming)
                                           667 Madison Avenue, 5th Floor
                                           New York, NY 10065
                                           Telephone: (212) 763-0060
                                           Facsimile: (646) 776-2600

Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

14